IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CR3005 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| RICHARD CANFIELD, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant seeks suppression of two statements made to Trooper Paul Hazard of the Nebraska State Patrol at the scene of a traffic stop on I-80 in Nebraska on November 25, 2008.  Specifically, defendant claims he was "in custody" at the time he made two incriminating statements during the traffic stop.  I conclude that he was not "in custody" for purposes of requiring *Miranda* warnings, and he made the statements voluntarily.  I therefore recommend that the motion be denied.

The motion was heard by me on May 20, 2009.  The events of the traffic stop were videotaped by an in-car video camera and recorded by means of the microphones in the trooper's vehicle as well as a body microphone he was wearing.  Without repeating unnecessary information, the facts as pertains to this defendant are as follows.

Defendant Canfield was a passenger in a vehicle driven by the co-defendant and stopped by Trooper Hazard for speeding.  Hazard had already spotted a small amount of marijuana in the car, and had determined from statements made by the co-defendant and his own observations that there were guns, silencers, and ammunition in the

vehicle.  The co-defendant had stated that the weapons belonged to Defendant Canfield.  Hazard had Canfield exit the vehicle and move in front of it several feet and then to sit just off the shoulder area of the roadway while he, Hazard, searched the vehicle.  Another trooper had just arrived to assist.

Trooper Hazard had Canfield approach him and asked, "Whose guns?"  Canfield answered that they were his, Canfield's, guns.  Hazard then asked "Where'd you get those?"  Canfield said he had just "acquired them over the years."  Hazard then asked, "Do you have a permit for them?"  Canfield stated that the permits were at his home, but he had none there at the scene of the stop.  Hazard then advises Canfield that if he had registered the guns and had permits for them, he would have known that the permits were required to be with the guns.  He then challenges Canfield with, "Do you want to bullshit me some more or do you want to be straight up?"  Canfield then says he does not want to say anything further, and Hazard arrests and cuffs him.  Exhibit 1, DVD of stop, at 15:46-8.  Hazard does ask Canfield one more question after he's been arrested, but Canfield invokes his right to silence and declines to answer.  As I understand the motion, that invocation of his right to silence is not part of the motion.  If it were, that fact should be suppressed, as defendant Canfield is clearly "in custody" at that point and has not been given *Miranda* warnings.

Until the cuffs were placed on his wrists, though, Canfield was not "in custody."  He was, to be sure, detained, and was not free to leave, but he was not being held with any of the force reasonably understood to be associated with a formal arrest.  The Eighth Circuit Court of Appeals has stated:

2

An individual is "in custody" when he has been formally arrested or his freedom of movement has been restrained to a degree associated with a formal arrest. [citations omitted]. In United States v. Griffin [,922 F.2d 1343 (8th Cir. 1990)] we enumerated six indicia of custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official request to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.
>
> Id., 922 F.2d at 1349. The presence of the first three indicia tends to mitigate the existence of custody at the time of questioning; the presence of the last three indicia aggravate the existence of custody. Id.

United States v. Wolk, 337 F.3d 997, 1006 (8th Cir. 2003).

In this case, the atmosphere was clearly police dominated, Canfield's movement was restrained, and he clearly did not initiate the contact. He was arrested at the conclusion of the conversation. However, there were no deceptions practiced on him, and no use of threats or promises or inducements to speak. In short, the officer did not engage in coercive activity, Colorado v. Connelly, 479 U.S. 157, 163-4 (1986), nor overreach his authority, nor overbear Canfield's will to remain silent. Canfield chose to answer the officer's questions, knowing he could invoke his right to be silent, as he promptly did shortly after the challenged exchange.

The situation depicted in the videotape is really a *Terry* stop.  As argued by the government, the Eighth Circuit and the Supreme Court have so held.

> The Supreme Court has analogized roadside questioning during a traffic stop to a *Terry* stop, which allows an officer with reasonable suspicion to detain an individual in order to ask 'a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'"

United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001) quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984).

In this case Trooper Hazard clearly had reasonable suspicion justifying further investigation.  The car was speeding.  He had seen someone inside the car throw a bag containing something white out of a window as he caught up to it.  He saw marijuana on the console between the seats.  His further investigation uncovered several guns and ammunition which he believed should have serial numbers on them and did not.  Finally, he had been advised by the co-defendant's father that the co-defendant had recently changed and now usually wore a bulletproof vest. Finally, the co-defendant seemed to know, or at least acted as though he knew, more about registration requirements than the owner of the guns, and his information differed from that obtained by the trooper from an ATF agent by telephone.  The situation dripped with reasonable suspicion justifying further inquiry until the trooper determined what was afoot, and he did so quite promptly and properly. Neither the defendant's *Miranda* rights nor his right to make only voluntary statements was violated in this case.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to suppress, Filing No. 26, be denied.

The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

Dated June 3, 2009.

                          BY THE COURT

                          s/ *David L. Piester*
                          United States Magistrate Judge